[Civ. No. 4471. First Appellate District, Division One.—April 5, 1923.]

KELLEY-CLARKE COMPANY (a Corporation), Respondent, v. JOHN H. LESLIE et al., Appellants.

[1] PLEADING — PARTIES — BREACH OF CONTRACT — AGENT OF UNDISCLOSED PRINCIPAL.—An agent who acts for an undisclosed principal in entering into a contract is the trustee of an express trust and may, in view of section 369 of the Code of Civil Procedure, sue in his own name for damages for a breach.

[2] ID.—ACTION BY AGENT—SETOFF AGAINST PRINCIPAL.—In an action by an agent for an undisclosed principal to recover damages for a breach of a contract, defendants may set up against the agent any counterclaim or setoff they might have against the principal.

[3] CONTRACTS — LETTERS AND TELEGRAMS — STATUTE OF FRAUDS.—A complete contract, binding under the statute of frauds, may be gathered from letters, writings, and telegrams between the parties relating to its subject matter and so connected with each other that they may fairly be said to constitute one paper relating to the contract.

[4] ID. — EXCHANGE OF TELEGRAMS — SIGNATURE BY PARTY TO BE CHARGED.—A contract for the purchase of pineapple entered into

---

1. Agent's right to sue on contract for undisclosed principal made in his own name, notes, 6 Ann. Cas. 556; Ann. Cas. 1917A, 454.

3. Effect of telegrams as writings to make a contract within statute of frauds, note, 50 L. R. A. 240.

by agents through the exchange of telegrams is not void under section 2309 of the Civil Code, requiring the signature of the parties to be charged, where subsequently signed telegrams and letters between the parties incorporated by reference the previous telegrams constituting the contract.

[5] SALES—CONTRACT FOR PURCHASE OF PINEAPPLE—CONSTRUCTION—PROMPT SHIPMENT.—In this action for damages for breach of a contract for the purchase of pineapple, the contract which was entered into through the exchange of telegrams between agents called for "prompt shipment" and not for "immediate shipment."

[6] INSTRUCTIONS—CONFLICT—APPEAL.—It is only when an erroneous instruction has resulted in prejudicing the rights of the complaining party that the judgment will be reversed, and it is the general rule that such action will not be taken by the appellate court for error in giving or refusing instructions if the verdict is manifestly right.

[7] ID.—CONTRACT FOR PURCHASE OF PINEAPPLE—BREACH—MEASURE OF DAMAGE.—In an action to recover damages for a breach of a contract to purchase pineapple, the proper measure of damage is the difference between the contract price and the resale price plus the additional expense of getting the goods to market where they were resold.

[8] ID. — DAMAGES — EVIDENCE — FORM OF VERDICT. — In such action, where the only evidence adduced at the trial as to the amount of the damage was the sum mentioned in the complaint, it was not error for the trial court to incorporate the amount in one of the forms of verdict submitted to the jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chickering & Gregory for Appellants.

Raymond Perry for Respondent.

ST. SURE, J.—Action for damages for breach of contract for the purchase of pineapple. Appeal by defendants from a judgment, after verdict, in favor of plaintiff, in the sum of $2,650.80. Plaintiff is a firm of brokers and manufacturers' agents with offices in San Francisco, and defendants have their place of business in Chicago.

The contract is evidenced by telegrams exchanged between F. A. Davis, a San Francisco broker, agent for plaintiff,

and the Continental Brokerage Company in Chicago, acting for defendants.   These telegrams show:

(1) An offer on July 15, 1920, by Davis, to Continental Brokerage Company, of a lot of sliced pineapple, subject to confirmation, for *prompt shipment;* (2) Request, on same day, from Continental Brokerage Company, for confirmation to defendants of all pineapple offered; (3) Advice, on same day, from Davis to Continental Brokerage Company, confirming for *prompt shipment* part of the goods by plaintiff to defendants, with an offer of additional goods to complete carload; (4) Request, on July 16, 1920, for confirmation of additional goods; (5) Advice, on July 16, 1920, of Davis to Continental Brokerage Company, of confirmation by plaintiff of additional goods "same terms my wire July 15 to complete carload. Shipping immediately."

We have made but brief reference to these telegrams because it is undisputed that they contain all the terms of a complete contract, viz., the seller, the buyer, the quality and quantity of the commodity purchased, the price, the manner of shipment, the manner of payment and the brokerage.

The goods were shipped July 24th, eight days later. On August 3d the Continental Brokerage Company advised Davis by wire that defendants refused to honor draft attached to bill of lading for the pineapple, claiming that the goods were bought for "immediate shipment" and shipped five days late. The market on pineapple had declined sharply—about twenty-five per cent—in the meantime. Davis replied by wire to the telegram of August 3d on the following day, explaining that the goods were shipped as soon as car could be obtained, and offering a discount if the draft were paid within a certain time. On August 5th defendants themselves sent to Davis the following telegram:

"Referring to telegram Continental Brokerage Kelley Clarke's car pineapple was confirmed immediate shipment other car was for prompt shipment. No stipulation as to car shortage which they were fully aware of and should not have confirmed if they could not comply with contract so we cannot accept as they were not shipped according to contracts.

"JOHN H. LESLIE & CO."

Plaintiff then sent to defendants a telegram, in reply, in part as follows:

"Very much surprised your attitude regarding pineapple which we confirmed July sixteenth for immediate shipment and shipped July twenty-fourth. Surely three days delay made no difference to you."

The use of the term ''immediate shipment'' in the foregoing telegram is explained in the following letter written by Mr. Adams, vice-president of plaintiff corporation, to the defendants:

"San Francisco, California,
"August 14th, 1920.

"John H. Leslie & Company,
    "Chicago, Ill.
"Gentlemen:

"The writer conducted a little investigation yesterday and discovered that the car of pineapple, which was shipped you by us on July 24th, was never confirmed for immediate shipment. The writer's statement in our telegram of August 5th, was incorrect, this being only on his understanding of the matter, and not on the actual facts. In explanation, will state that the writer was out of town at the time these goods were confirmed, and it was only yesterday that we discovered that the goods had been confirmed you for prompt shipment, and also that they were originally offered on this basis. This being the case, we intend to protect our interest and suggest that you look into the matter and if you find we are correct take up our draft upon arrival of the goods.

"Yours very truly,
"KELLEY CLARKE COMPANY,
"Per AWA."

Numerous telegrams and letters were exchanged between plaintiff and defendants as to whether the contract was one for ''immediate shipment'' or ''prompt shipment.'' Plaintiff took the position that the goods were offered, accepted and confirmed for *prompt* and not *immediate* shipment. Defendants were put upon notice that refusal to honor plaintiff's draft would result in suit by plaintiff for the full amount of the invoice or for any loss occasioned by resale. The car of pineapple arrived in Chicago August 17th and was later sold to a New York buyer and shipped to New York. Damages claimed are made up of the difference between the invoice price under the contract and that on resale; demurrage on the car while held in Chicago, and expenses in

carrying the goods to the new market. On the trial defendants offered no evidence but relied on objections to the introduction of the documents offered by plaintiff and cross-examination of its witnesses.

[1] Defendants urge five points for a reversal of the judgment. The first is that plaintiff is not the real party in interest, citing section 367 of the Code of Civil Procedure, and arguing that the case does not come within the exceptions set forth in section 369 of the Code of Civil Procedure. There is some evidence in the record to the effect that the pineapple in question was owned by Kockos Bros. Conceding plaintiff to have been, as defendants now contend, agent for an undisclosed principal, plaintiff was the trustee of an express trust, and as such an exception to the general rule requiring suits to be prosecuted in the name of the real party in interest. (*Allen* v. *Chatfield,* 34 Cal. App. 785, 786 [168 Pac 1149], and cases cited therein.) It makes no difference whether the principal knew of the suit or not. [2] In such an action defendants may set up against the agent any counterclaim or setoff they might have against the principal. The record shows that defendants dealt with the plaintiff as the real party throughout the entire proceedings and set up no objection to it on this ground in their answer.

[3] The second point is that there is no memorandum signed by defendants or their authorized agents, and that the contract is therefore void by reason of the statute of frauds. The record clearly shows a contract entered into between plaintiff and defendants through Davis in San Francisco and the Continental Brokerage Company in Chicago. It is the law that a complete contract, binding under the statute of frauds, may be gathered from letters, writings, and telegrams between the parties relating to its subject matter and so connected with each other that they may fairly be said to constitute one paper relating to the contract. (*Elbert* v. *Los Angeles Gas Co.,* 97 Cal. 244 [32 Pac. 9].)

[4] Conceding that the telegrams contain all of the elements of a contract, nevertheless defendants contend that the contract yet lacks the greatest essential, to wit, the signature of the parties to be charged, either by the parties themselves or someone shown to be authorized by them.

(Sec. 2309, Civ. Code.) By their signed telegram of August 5th, quoted above, defendants treated the contract as one made for them with plaintiff. Signed telegrams and letters between the parties incorporated by reference the previous telegrams constituting the contract. Defendants neither denied the contract nor repudiated the acts in their behalf of the Continental Brokerage Company. In a letter written by defendants to plaintiff on August 14th, before the goods arrived in Chicago, wherein defendants seek to justify their position in interpreting the contract as one for *immediate shipment,* they say: "We are sorry that a misunderstanding has arisen but *a contract is a contract.*" It will thus be seen that while there was not an express ratification of the *effect* of the contract expressed in words, there was an express recognition that there was a contract. The uncontradicted evidence is that the respective parties recognized the transaction as one under a contract, the difference between them being as to whether the contract called for "prompt shipment" or "immediate shipment." As was said by our supreme court in *Ballard* v. *Nye,* 138 Cal. 588, 597 [72 Pac. 156, 159]: "Of course authority must be shown, but it need not be express authority; it may be implied, and one of the recognized legal methods of proving authority is by ratification. From such proofs the law implies previous authority to the same extent as if in the first instance it had been expressly conferred. The doctrine of ratification proceeds upon the theory that there was no previous authority, and that the relation of principal and agent did not in fact exist, but implies it from the acts and conduct of the parties, and when so implied, is equivalent to previous authority, and results as effectively to establish the relation of principal and agent as if the agency had been authorized in the beginning." (Sec. 2307, Civ. Code; *Quinn* v. *Dresbach,* 75 Cal. 162 [7 Am. St. Rep. 138, 16 Pac. 762] ; *Ralphs* v. *Hensler,* 97 Cal. 301 [32 Pac. 243] ; *Pope* v. *Armsby Co.,* 111 Cal. 159 [43 Pac. 589] ; *Ford* v. *Lou Kum Shu,* 26 Cal. App. 203 [146 Pac. 199] ; *Anglo-California Bank* v. *Cerf,* 147 Cal. 393, 399 [81 Pac. 1081] ; *Union Trust and Realty Co.* v. *Best,* 160 Cal. 263, 267 [116 Pac. 737] ; *Phillips* v. *Phillips,* 163 Cal. 530, 535 [127 Pac. 346].)

The third point is that "the jury arbitrarily and without warrant disregarded the peremptory instructions of the

court with regard to the effect of the immediate shipment clause.''

[5] The trial court erroneously interpreted the contract to be one for "immediate shipment." The contract is contained in the first five telegrams exchanged between Davis on behalf of plaintiff and the Continental Brokerage Company on behalf of defendants. The offer was made and accepted for *prompt shipment.* An additional offer was made upon the same terms as the first, and was thereafter accepted. In the telegram confirming the sale of additional goods the agent for plaintiff uses these words: "Same terms my wire July 15th to complete car. Shipping immediately.'' The words ''shipping immediately'' were not a necessary part of the contract between the parties. The contract used the term ''prompt shipment''—the goods were offered and accepted on that basis. In the interchange of telegrams the term ''immediate shipment'' was not used or suggested by either party to the contract, although, in the shipping business, the term ''immediate shipment'' has a special significance. There is evidence in the record to show that it means within five days. ''Shipping immediately'' has no particular significance other than is conveyed by the ordinary meaning of the words. ''Prompt shipment'' means within a reasonable time. It may therefore be said that in the shipping business ''immediate shipment'' and ''shipping immediately'' are not regarded as synonymous terms. We think that the use of the words ''shipping immediately'' were merely incidental to the telegram of confirmation in which they appeared, and were added by plaintiff's agent for the purpose of indicating to the buyer that the shipment would be made without unreasonable delay. The goods were shipped within eight days.

The trial court instructed the jury in part as follows:

''I charge you that the word 'immediately' undoubtedly has a relative meaning, and must be read in the light of surrounding circumstances.''

''I hereby instruct you that the words 'immediate shipment,' as used in the contract involved in this action, if any, meant not in excess of five business days.''

''I furthermore instruct you that if you believe from the evidence in this case that the term 'immediate shipment' meant shipment within five days from the making of the

contract, if any, and that the shipment in question was not made until eight days thereafter, your verdict shall be in favor of the defendants and against the plaintiff, even though the failure to ship within five days was due to inability upon the part of plaintiff to secure transportation.''

''I instruct you that there is no note or memorandum signed by any of the defendants herein, stating that the terms of shipment, if any, were otherwise than immediate shipment, you are therefore to take it as the fact, that if there existed any contract in the present matter, such contract provided for immediate shipment.''

A reading of these instructions renders analysis of them unnecessary. They are obviously conflicting, and the last is so strongly favorable to the defendants that we are willing to adopt defendants' characterization of it as ''peremptory.'' The trial court accepted the erroneous construction given to the contract by defendants as the last of the above-quoted instructions virtually directed the jury to find for the defendants. But the trial court must have been confused about the matter, because there is a conflict in the instructions, and, further, while in effect doing so, it refused to give an instruction for a directed verdict, in terms, in favor of defendants, and submitted the case to the jury with two forms of verdict, one for damages for plaintiff in the full amount prayed for, and the other a general verdict in favor of defendants. The jury either disregarded or misunderstood the instructions of the court. The verdict was in favor of plaintiff and against defendants for the amount sued for. This presents an interesting, but by no means novel, question. It has been repeatedly held that ''a conflict in instructions which could not operate injuriously to appellant is not ground for reversal.'' (*Dennison* v. *Chapman,* 105 Cal. 447, 448 [39 Pac. 61, 64], and cases therein cited.) [6] It is only when an erroneous instruction has resulted in prejudicing the rights of the complaining party that the judgment will be reversed, and it is the general rule that such action will not be taken by the appellate court for error in giving or refusing to give instructions if the verdict is manifestly right. (14 R. C. L., sec. 74, pp. 815, 816.) Mr. Thompson, in his work on Trials, section 2431, says that instructions faulty or technically erroneous will not work a reversal of the judgment if the jury are not

misled or if as a whole the case was fairly presented to them —and especially if their verdict is obviously correct.   And, further, as having some bearing on this case, we find in *Yolo Water and Power Co.* v. *Hudson,* 182 Cal. 48, 51 [186 Pac. 772, 774] : "A party cannot complain of an instruction given at his own request, or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one." Interpreting the contract as being one for "prompt shipment" and not for "immediate shipment," we are of the opinion that the verdict of the jury was manifestly right and therefore should not be disturbed.

[7]   The next point is that "the amount of the damages cannot be sustained and the manner in which the assessment of said damages was submitted to the jury constituted prejudicial error." Plaintiff sued for $2,650.80, and the jury's verdict was for that amount.   The complaint, following the language contained in subdivision 2 of section 3311 of the Civil Code, alleged: "That by reason of said breach of contract said plaintiff has been damaged in the sum of two thousand six hundred fifty and 80/100, which is the difference between the actual amount due from the defendants under the terms of the contract, hereinbefore referred to over the value to plaintiff, together with the expenses properly incurred in carrying said merchandise to market, which would not have been incurred if defendants had accepted said merchandise."

The evidence showed that the difference between the contract price and the price at which plaintiff resold the goods was the sum of $1,911.10, and that the sum of $739.70 was for the additional expenses incident to the resale of the pineapple in New York.   Defendants say in their brief: "The theory upon which plaintiff proceeded in attempting to prove its damage was apparently that it was entitled to the difference between the contract price and the resale price, plus the additional expense in getting the goods to market where they were resold." We think the theory was correct and that the modifications suggested by defendants do not apply.   The undisputed evidence of the resale and the price obtained thereupon is sufficient.   The testimony as to the amount of the expenses was not objectionable because given in a lump sum.   Defendants could have ob-

tained itemization of the charges when opportunity was given to do so upon cross-examination. It is too late to complain of that now.

The objection that the sale was not conducted in accordance with the provisions of the Civil Code is without merit. The uncontradicted evidence shows that an effort was made to resell the goods in Chicago, and that there was no market in that city. Defendants admitted that they knew that the goods were offered for resale in Chicago, and as plaintiff suggests, they were thus given an opportunity of saving the item of expense of which they complain.

[3] The only evidence adduced at the trial as to the amount of the damages was that introduced by plaintiff. It showed that the amount of damages was the sum mentioned in the complaint for which judgment was asked, to wit, $2,650.80. That being the only evidence before the court upon the subject, it was not error for the trial court to incorporate the amount in one of the forms of verdict submitted to the jury.

In urging their last point for reversal defendants say that the trial court committed an "unusual number" of errors in its rulings on evidence and in its giving or withholding of instructions. The record shows that the court had a somewhat difficult task to perform during the trial of the case, as almost every question asked by plaintiff of its witnesses was objected to by defendants. We have read the record and find it free from error prejudicial to defendants. In view of what we have heretofore said about the court's instructions, we think further discussion thereof unnecessary. The instructions given were most favorable to the defendants, and complaint that others more favorable were not given is supererogatory.

The judgment is affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 4, 1923.