[Civ. No. 6227. First Appellate District, Division One.—April 5, 1928.]

EARL FRUIT COMPANY (a Corporation), Respondent, v. SAMUEL HERMAN et al., Defendants; GLOBE INDEMNITY COMPANY (a Corporation), Appellant.

Hartley F. Peart, Gus L. Baraty and Sylvester J. McAtee for Appellant.

Devlin & Devlin for Respondent.

TYLER, P. J.—Action upon a bond executed by defendant Globe Indemnity Company, as surety, in favor of plaintiff corporation.

The complaint in substance alleges that on or about the thirteenth day of September, 1923, the plaintiff, Earl Fruit Company, entered into an agreement with defendant Samuel Herman, whereby said company agreed to make daily shipments of grapes during the season of 1923 to said Herman on consignment, the grapes to be sold by Herman as agent for plaintiff; that Herman agreed to remit to plaintiff the amount received from the proceeds of the sales, less any charge for commission to which he might be entitled; that in consideration of entering into the contract, Herman, as principal, and defendant Globe Indemnity Company, as surety, made and delivered to plaintiff a surety bond in writing conditioned upon Herman faithfully accounting for and properly remitting to plaintiff such moneys as might be due to it from the sale of the grapes. The bond, which is made part of the complaint, is in the sum of $7,500, and it recites that it is to remain in full force and effect until the thirty-first day of December, 1923. Proceeding, the complaint alleges that in pursuance of the agreement

plaintiff made shipments of grapes to Herman on consignment and that Herman, as agent, sold the same and, on or about December 1, 1923, received the proceeds of such sale, but that he failed to remit to plaintiff a portion of such proceeds amounting to the sum of $3,954.25, which sum it is alleged is now due and owing to plaintiff, and judgment is prayed for in this amount.

Defendant Globe Indemnity Company by its answer, among other things, denied ownership in plaintiff of the grapes referred to in the complaint and alleged ownership in one Henry Martin, who, it is claimed, delivered the same to plaintiff, as agent, for shipment to defendant Herman; that thereafter said grapes were shipped to said defendant by plaintiff for and on behalf of Martin and said Martin thereupon entered into a new agreement in writing directly with defendant Herman without the knowledge or consent of defendant Globe Indemnity Company, whereupon Herman issued to Martin four certain trade acceptances under which the time of payment was extended. It is then alleged that at this time Herman was solvent but thereafter became insolvent and unable to pay for the grapes.

The facts adduced at the trial are without substantial conflict. It appears therefrom that plaintiff, Earl Fruit Company, is a corporation engaged in the business of buying and selling fruits, including grapes, for its own account, and that it handles grapes for others. The grapes concerning which suit was brought were owned by one Henry Martin and some seven others. Prior to September 13, 1923, Earl Fruit Company agreed to ship said grapes to defendant Herman on consignment and under a guaranteed price, said Herman agreeing to remit to Earl Fruit Company the amount guaranteed or received from the proceeds of the sale thereof, less any charge for commission to which he might be entitled. The identity of the various owners of the grapes was disclosed to Herman, together with an estimate of the tonnage to be produced by each owner. It was further agreed that Herman should have the right to sell the grapes to his trade upon credit and was to have a certain period of time in which to make his payments in order to enable him to collect the proceeds of his sales, provided he would furnish to plaintiff a surety bond

as security, that he would account for and properly remit to plaintiff such moneys as might be derived from the sale or guaranteed price of the grapes, less his commission, and that the term or duration of said bond would be such as to fully protect plaintiff in securing such proceeds of sale by reason of the credit to be extended to him. Pursuant to such understanding the bond in question was executed by Globe Indemnity Company in favor of plaintiff upon its own stationery, and was so issued for a compensation. Thereafter plaintiff shipped grapes to Herman to the amount of $8,285.80, and advanced the additional sum of $168.45 for freight charges upon boxes forwarded by Herman to plaintiff for use in shipment. Defendant paid $5,500 on account of this amount, leaving a balance due in the sum of $2,954.25, which is the amount of the demand of plaintiff against defendants.

The period for the shipment of grapes having ended about November 1, 1923, plaintiff demanded a statement of account from Herman and payment for the amount due for the grapes shipped to him. Thereafter on or about November 15th following, this statement was furnished, but payment was not made, Herman requesting plaintiff to receive certain trade acceptances, representing the same would mature prior to the expiration of the bond furnished by Globe Indemnity Company, and that the taking of said trade acceptances would not prejudice any right that plaintiff might have against such company upon its bond. Plaintiff refused to take the offered trade acceptances, whereupon Herman interviewed one Sam Martin, son of Henry Martin, one of the owners of the grapes, making like representations to him respecting the offered acceptances. Martin agreed to the proposal and thereupon four trade acceptances, each dated November 15, 1923, were made to the order of Henry Martin for the sum of $998.56 each, payable respectively December 1, December 10, December 15 and December 20, 1923, and were accepted by Sam Martin on behalf of his father, Henry Martin, with the knowledge of plaintiff and in the presence of its representative, but against his consent and without the knowledge or consent of defendant Globe Indemnity Company. Each of the acceptances was presented by Henry Martin for payment

and dishonored. Subsequent to the dishonor of the one due December 1, 1923, plaintiff advised Globe Indemnity Company of the execution and delivery of said trade acceptances, the dishonor of the first, and that plaintiff would look to it for payment by reason of the bond. On March 4, 1925, defendant Herman was declared a bankrupt by voluntary bankruptcy proceedings and the balance due by reason of the transaction was reduced by the sum of $205.62, paid to plaintiff by the assignee, leaving a net balance of $2,748.63. Under these facts judgment was rendered against Herman for this sum and for the sum of $2,580.18 against defendant Globe Indemnity Company, the court holding that the amount of $168.45 advanced by plaintiff in connection with freight charges was not covered by the bond and that such amount should, therefore, be deducted so far as it was concerned.

Appellant Globe Indemnity Company here contends: 1st. That the plaintiff, having suffered no loss, it cannot recover from the surety, and, as a corollary, that the plaintiff cannot recover from the surety on behalf of the real owners of the grapes; 2d. That even if plaintiff had suffered a loss, nevertheless, due to a material alteration of the contract and of the obligation for the payment of which the bond was given, the surety has been released.

In support of the first point it is argued that plaintiff is not the real party in interest, it never having owned the grapes, and that as to the true owners the surety has incurred no obligation, the bond running to plaintiff as sole obligee and to which alone the surety is liable. In this connection it is claimed that there is no privity of contract between the owners and the surety, and such surety has the right to stand strictly upon the terms of its obligation and to answer solely to the obligee named therein for any loss it may have suffered. ▪ While it is generally true that a surety is entitled to stand upon the express terms of his contract it is equally true that where an agent enters into a contract in his own name on behalf of an undisclosed principal not only may the principal sue in connection with said contract in his own name, but also the agent himself may in like manner sue thereon. The right of an agent to sue on a contract which has been entered into in his own

name has met with universal recognition. Whenever the agent contracts directly with a third person, the law allows the agent, treated as a principal, to sue on the contract in his own name, whether the fact of the agency was or was not known to the other contracting party. (*Tustin Fruit Assn.* v. *Earl Fruit Company,* 6 Cal. Unrep. 37 [53 Pac. 693]; *Parker* v. *Otis,* 130 Cal. 322 [92 Am. St. Rep. 56, 62 Pac. 571]; *Kelley-Clark Co.* v. *Leslie,* 61 Cal. App. 559 [215 Pac. 699].) ■ The fact, therefore, that plaintiff is not the real party in interest is of no consequence. The contract with Herman, and the bond given by the Globe Indemnity Company were negotiated by plaintiff and entered into by it in its own name. ■ Plaintiff received the grapes as agent of the owners for the purposes of sale and it sold the same under its agency. Having directly contracted with appellant as a principal, the law allows the agent to sue in his own name, though not the real party in interest and as above indicated the fact that the agency was or was not known to appellant is of no consequence. The rule that every action must be prosecuted in the name of the real party in interest (sec. 367, Code Civ. Proc.) is subject to the further rule that a person with whom or in whose name a contract is made for the benefit of another, is a trustee of an express trust which permits him to sue with like effect as though he were the principal in fact. (Sec. 369, Code Civ. Proc.) ■ Nor does the fact, as claimed, that the obligation is in the nature of a specialty alter or change the situation. Whatever the rule may be in other jurisdictions, our code provisions abolish all distinctions between sealed and unsealed instruments (sec. 1629, Civ. Code; sec. 1932, Code Civ. Proc.). Here plaintiff was an agent in whose name the instrument sued on has been executed and he may sue thereon for the purpose of enforcing the obligations thereof. There is no merit in this objection. ■ The remaining contention that, even assuming plaintiff to have suffered a loss, and, therefore, entitled to sue in his own name, nevertheless, due to a material alteration of the contract and of the obligation for the payment of which the bond was given, appellant has been released, is, in our opinion, equally without merit. The contention is based upon the act of Sam Martin in agreeing to receive

the trade acceptances offered by Herman. The trial court found that Sam Martin acted solely on behalf of his father and was not authorized by any of the other growers to take the same. Irrespective of any question of authority in Sam Martin in the premises, it seems clear to us that this act in no manner prejudiced appellant. The bond involved provides that it shall remain in full force and effect until the thirty-first day of December, 1923. None of the trade acceptances extended the time of payment beyond that period. The bond was given to insure payment of the grapes received by Herman and which he sold on credit. The agreement between the parties with reference to payments to be made by Herman was silent as to any particular due date. At most the trade acceptances definitely fixed such date. There never was an extension of the time of payment, for without a due date a subsequent agreement fixing such date is not an extension. Such an agreement merely establishes the maturity of the obligation which theretofore had been indefinite. The term of the bond was up to December 31, 1923, and the only meaning this limitation can have is that plaintiff had the right to extend credit to Herman up to this time within which to make payments of the grapes shipped to him. Up to the time of the execution of the bond no term of credit had been definitely agreed upon, and the bond fixed the period so far as the surety was concerned, and the trade acceptances were within the limitation agreed upon. Under these circumstances the terms of the bond were not changed as the trade acceptances merely marked the period of credit within which the payments were to be made. In other words, they fixed a due date which was still within the period limited in the bond (*Tyson* v. *Reinecke,* 25 Cal. App. 696 [145 Pac. 153].)

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1928.

All the Justices concurred.