[No. 8,576. Department One.—October 31, 1884.]

SAMUEL G. MURPHY, RESPONDENT, v. OSCAR HELM-
RICH ET AL., APPELLANTS.

AGENCY—PERSONAL LIABILITY OF AGENT.—A party who contracts for the pur-
chase of personal property cannot excuse himself from liability upon the
ground that he was the agent of another, unless he disclosed the name of
his principal at the time of making the contract, and declared that he acted
in his behalf.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a
new trial.

The facts appear in the opinion of the court.

*Freidenrich & Ackerman,* for Appellants.

*Charles J. Swift,* for Respondent.

McKEE, J.—This was an action to recover the difference be-
tween the contract and market price of one hundred shares of
San Francisco gas stock, which the plaintiff claims to have sold
to the defendants on the 15th of October, 1878.

It is contended that the defendants are not liable, because
there was no note or memorandum of the sale in writing, or
subscribed by them, and therefore the sale was void; and be-
cause in the transaction they acted in the capacity of brokers for
another person for whom they purchased, and not for them-
selves.

The promise by the defendants on the 15th of October, to
take the stock at the stipulated price, was verbal. Next day
the plaintiff sent word to the defendants that the stock was
ready to be delivered to them, and to come and get it, and pay
for it. They declined to pay, but, in answer, wrote to the plain-
tiff as follows:

"The purchaser of the 100 shares of gas stock has not
made his appearance, and it looks very much as if he was
trying to back out. If you have accounted for the stock
already, we will, of course, make the deficiency good; if not,
would advise to do nothing in the matter, as there are to-day no
buyers over 94 cents.                    Yours, etc.,
                                        "HANSEN."

Written on the back of the note was the following :

" Will call as soon as I can get a chance."

On the same day the plaintiff also received the following :

"I have not seen the purchaser of the 100 shares gas stock, but we guarantee that it is all right at 95½, and you can account for it to your buyer at that rate. But we shall probably only take the stock to-morrow, unless we meet the party. Will that be in order ?                    Yours, etc.,

" HANSEN."

After the receipt of those notes, the plaintiff tendered the stock to the defendants, at their place of business, and demanded the amount of the purchase money. They declined to take the stock or pay the money, but afterwards wrote the plaintiff as follows :

" October 24, 1878.

" In the present state of the market for gas stock, we have not as yet received a satisfactory bid. We think, however, you had better sell the stock, if you have an opportunity to do so.

" But we cannot understand why you should wish to sell it on our account, as we did not buy it on our account. Surely, we thought the party that wanted the stock could be depended on, which we told you, acting as your agent and in your interest.

"Under no circumstances could we have acted any different-ly, but it appears unfortunately, for the owner of the stock. We shall continue our effort, and remain,      Yours, etc,

"HELMRICH & HANSEN.

" Mr. Murphy, of the Pacific Bank."

Upon the receipt of this last note, the plaintiff sold the stock in market for $87.50 per share, and notified the defendants that he would look to them for the deficiency ; but they refused to pay, and hence this action.

The defendants, by their answer to the complaint in the action, specifically denied the averments of the complaint, and set up that they acted in the transaction " solely as brokers and agents for others "; and the only questions at issue were : 1. Did the defendants buy the stock as charged in the complaint ? 2. Did they buy for themselves, or as agents for another ?

The evidence shows that there was a complete verbal contract of sale, which was followed by written admissions of the contract, signed by the defendants. These they signed by their own names, and not as agents for any other person whom they named as principal. In thus signing them they bound themselves as principals, even if they were acting for another, unless it was so understood and intended between them and their vendor. But their memoranda did not disclose the name of any principal, and there was no evidence given tending to prove that there was any other known person for whom they acted, and intended to bind. Where an agent does not attempt in an instrument to bind his principal, and in terms imposes the obligation on himself, the rule is that he incurs by such act a personal liability, even although he described himself as agent. (*Dayton* v. *Warne*, 43 N. J. L. 659.) This personal liability they assumed, for while vaguely intimating that there was somebody for whom they were acting, they guaranteed the plaintiff as their vendor, that he would be paid the $95.50 per share for the stock which they agreed to buy from him; and afterwards directed him to sell it, and they would make good any deficiency. He accordingly sold the stock in open market, and accounted to them. Under those circumstances, they are not relievable from responsibility on the ground of agency for some unknown person.

"If a person," says Chancellor Kent, " would excuse himself from responsibility on the ground of agency, he must show that he disclosed his principal at the time of making the contract, and that he acted on his behalf, so as to enable the party with whom he deals to have recourse to the principal in case the agent had authority to bind him."

"The agent becomes personally liable when the principal is not known, or when there is no responsible principal, or where the agent becomes liable by an undertaking in his own name, or when he exceeds his power." (2 Kent's Com., pp. 630–631.)

And such is the English law: "A man has a right to the character, credit and substance of the person with whom he contracts; if, therefore, he enters into a contract with an agent, who does not give his principal's name, the presumption is that he is invited to give credit to the agent; still more, if the agent

does not disclose his principal's existence." (Anson on Cont. 345 ; see also Benj. on Sales, pp. 235, 52, 53.)

We find no error in the record.

Judgment and order affirmed.

McKINSTRY, J., and Ross, J., concurred.

Hearing in Bank denied.