[Civ. No. 4266. Third Appellate District.—April 23, 1931.]

KNOX HENRY, Respondent, v. MILTON ASHBY NELMS et al., Appellants.

Mark M. Cohen, Janeway, Beach & Pratt and S. T. Hankey for Appellants.

Harrah, Louis & Quillian and H. B. Pool for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment for broker's commissions for the exchange of real properties.

The defendants were the owners of 2,100 acres of farm land near Walla Walla, Washington, and a dwelling-house in that same city. Both properties were free of encumbrance. While the defendants were visiting at Los Angeles in 1926, they advertised a desire to sell or exchange these properties. The plaintiff, who was a duly licensed real estate broker, residing at Los Angeles, answered this advertisement. The plaintiff and defendants conferred several times regarding a proposed exchange of properties. Mr. Nelms returned to his home at Walla Walla. Mrs. Nelms remained at Los Angeles. The plaintiff took her to inspect several apartment houses with a view of procuring an exchange of properties. The plaintiff then represented to Mrs. Nelms that he had a client by the name of Paul G. Moorhead who owned the Nadine apartments on Fedora Street in Los Angeles and an eight-room family flat situated on Grace Avenue in Hollywood, which might be procured in exchange for their Walla Walla properties. After several conferences between the plaintiff and Mrs. Nelms, together with some correspondence with her husband, two separate contracts of exchange of properties were executed by Mrs. Nelms and accepted by Paul G. Moorhead. These contracts were signed by neither the husband of Mrs. Nelms, nor the wife of Mr. Moorhead. There is no evidence that either of these contracting parties had the authority to bind their respective spouses to convey the property in which they were interested. These same contracts contained the written employment of the plaintiff as defendants' agent with an agreement to pay him stipulated commissions provided he procured *from the ·owner* of the property last described therein "an acceptance of this offer [to exchange specifically described real properties] on the terms and conditions herein specified, and on no other terms and conditions".

It is not contended that the respective parties were brought together so as to enable them to consummate the proposed exchange of properties. It does not appear that either of the defendants ever met or conferred with Mr. Moorhead regarding the exchange of properties. Both parties to the contracts were clients of the plaintiff. The entire transaction was conducted through the medium of the plaintiff. The exchange of the properties was never consummated. The defendants refused to pay the commissions. The plaintiff contends that the mere procuring of the written acceptance of Paul G. Moorhead to the terms of the contract fulfilled the obligations of his employment and entitled him to the stipulated commissions. Upon this theory a suit was commenced. The complaint contained two counts. The first cause of action was based upon the contract to exchange the 2,100-acre farm at Walla Walla for the Nadine apartments in Los Angeles and prayed for commissions in the sum of $3,000. The second cause involved the contract for an exchange of the Walla Walla dwelling-house for the Hollywood dwelling-house, and demanded additional commissions in the sum of $1500. At the trial the court adopted findings favorable to the plaintiff. Judgment was accordingly rendered in his favor and against the defendants jointly for the respective sums prayed for. From this judgment the defendants have appealed.

The appellants contend that the findings and judgment are not supported by the evidence. They assert that the contracts were mere offers without the authority of the husband to exchange specifically described properties for other definitely identified properties with an offer to pay broker's commissions only when their agent had procured the written acceptance of the terms of these agreements *signed by the owners* of the properties for which they agreed to exchange; that the acceptance of each owner of these properties was not procured, and that the plaintiff failed to fulfill the terms of his employment, and therefore earned no commissions.

The record does not disclose the nature of the title of the respective defendants in the Walla Walla properties. It does appear they were husband and wife. There is no evidence that M. A. Nelms authorized his wife in writing to employ the plaintiff as his agent to negotiate an ex-

change of the Walla Walla properties, or to pay him commissions for that service. Mr. Nelms was in Walla Walla when the contracts were executed. He signed neither of them. The correspondence with him was introduced in evidence. It indicates that he refused to agree to the proposed terms of exchange. Even though the defendants held community interests in the Walla Walla properties, Mrs. Nelms had no legal right to bind her husband by the terms of these contracts. (13 Cal. Jur. 840, sec. 41.) He had never authorized her in writing to do so. It was necessary for the defendant M. A. Nelms to have authorized the plaintiff in writing to represent him as his agent in the disposition of his property in order to bind him to pay broker's commissions. (Sec. 1624, Civ. Code.) This was not done. Before Mrs. Nelms could bind her husband individually, in the employment of the plaintiff, a real estate broker, as his agent, she would also have to be so authorized in writing. Section 2309 of the Civil Code provides, ''An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing.'' The judgment against the defendant M. A. Nelms is therefore without support of the evidence. Nor will subsequent acts of the husband constitute a ratification of the wife's appointment of an agent in his behalf, without full knowledge on his part of the obligation created, together with evidence that he intends thereby to assume the liability. (13 Cal. Jur. 843, sec. 42.) The evidence in the present case shows no such knowledge or intention on the part of Mr. Nelms. The subject of the employment of an agent and the promise to pay him commissions for procuring an acceptance to the proposed exchange of properties is not mentioned in the correspondence.

 The first contract for the proposed exchange of the 2,100-acre ranch at Walla Walla for the Nadine apartments at Los Angeles was apparently prepared by the plaintiff and signed by Mrs. Nelms during the latter part of January, 1926. This contract did not authorize the plaintiff to procure the acceptance of Paul G. Moorhead, or any other specific individual. The name of the owner of the apartments was not mentioned in the document. Apparently Mrs. Nelms had never met the owner of this prop-

erty. She did not know who he was. All the information which she possessed on that subject was evidently derived from the plaintiff. On cross-examination, she did admit that "that gentleman [Mr. Moorhead] was supposed to own the property". The contract was very specific to the effect that the plaintiff was to procure the acceptance to the terms of this offer to exchange properties which were therein definitely described, to be signed by the *owner* of the Nadine apartments. The language of this contract in that regard reads as follows: "I hereby agree to exchange my property in the county of Walla Walla, State of Washington, as follows: (Here follows a description of the 2100-acre ranch) for that certain real property situate in the county of Los Angeles, State of California, described as follows: (Here follows a description of the Nadine apartments.) I agree to convey . . . *to the owner* of the property secondly described, . . . (Here follows the terms and conditions of the exchange.) Unless this offer shall be accepted within three days of the date hereof, . . . this offer shall thereupon immediately be and become revoked, . . . "

The meaning of this language is too apparent to be misunderstood. It may not reasonably be said that Mrs. Nelms was thereby accepting a particular individual as able and willing to exchange his property upon the terms of this contract. Clearly, she authorized her agent to obtain only the acceptance of the *owner* of the Nadine apartments. The construction is necessarily implied, that "Unless this offer shall be accepted [*by the owner of the Nadine apartments*] within three days of the date hereof", this offer shall become void. There is no ambiguity in the language of this contract respecting the identity of the person whose acceptance was authorized. Testimony to the effect that Mrs. Nelms requested her agent to procure the acceptance of any person other than the owner of the Nadine apartments was incompetent and at variance with the terms of the instrument.

At the bottom of this offer to exchange properties there is indorsed an unqualified acceptance thereof by the plaintiff's client Paul G. Moorhead. This document is not signed or accepted by any other person. According to the unambiguous terms of the contract the defendant, Mrs. Nelms, agreed to exchange the 2,100-acre ranch for the

Nadine apartments, and obligated herself to pay broker's commissions only in the event that contract was accepted *by the owner of the Nadine apartments.* It may not be asserted that the procuring of an acceptance on the part of any impecunious stranger to the title would amount to a compliance with the terms of the contract so as to entitle the plaintiff to his commissions. Under the terms of this contract, the acceptance of no one but the real owner of the property will fulfill the requirements which will entitle the broker to his commissions.

The evidence is without contradiction that this Los Angeles property did not stand in the name of Paul G. Moorhead. There is no evidence in the record to the effect that he was then the owner of this property or that he had any title therein. In the course of the trial it was stipulated between respective counsel that, ''The clear record title to the two pieces of property, was not in Paul G. Moorhead's name, but one of them was in the name of a Mr. Kraus, and the other in the name of Alice Moorhead, the wife of Paul G. Moorhead.''

A similar situation exists with respect to the second contract. What has been previously said regarding the failure to procure an acceptance of the first contract by the real owner of the Nadine apartments, also applies to the second contract. The second contract, which is signed by Mrs. Nelms only, offers to exchange the dwelling-house at Walla Walla for the dwelling-house at Hollywood. The following language appears in this second contract, after describing the Walla Walla property: ''Which they [the defendants] desire to exchange for the following second piece of property owned by Paul G. Moorhead *and his wife* . . . '' This second contract also contains an authorization for the plaintiff to act as an agent ''in negotiating an exchange''. It is further stated that, ''When he [the plaintiff] has secured an acceptance of the proposition to exchange the above described property on the above terms, I [will] then pay the sum of Fifteen Hundred Dollars as commission for such services.'' This second contract was subsequently signed by Paul G. Moorhead. It was not signed by his wife. According to the preceding stipulation this property stood in the name of Mrs. Moorhead. In the absence of evidence to the contrary it must be presumed

she owned the property. The record contains no written authority for Paul G. Moorhead to bind his wife to the terms of this contract as her agent. The requirement of the plaintiff to procure the acceptance of the owner of this property was therefore not fulfilled.

Thus it appears that the title to neither of these properties for which the defendants had agreed to exchange, was in the party who had signed the acceptance. If Moorhead had any title whatever to either of these properties, the evidence fails to disclose the nature of his claim. The burden was on the plaintiff in this case to prove that he procured an acceptance of the agreement to exchange properties signed by the owner of the properties for which the exchange was to be made. The contract to exchange specifically described properties, signed and accepted only by a stranger to the title, would be utterly valueless and unenforceable. One who held no title to the property could not be forced to convey title. The appellant relies upon the general rule that where the broker procures a contract for the sale or exchange of real property, he has earned his commissions. Commenting upon this principle in the case of *Carrington* v. *Smithers,* 26 Cal. App., at page 467 [147 Pac. 225, 27], the court says: ''The ground upon which the liability attaches in such instances is stated to be that, 'by entering into a *valid* contract with the customer produced by the broker, the principal accepts the customer as able, ready and willing to buy the land and pay for it'.'' But the authorities are uniform to the effect that it is only when the contract is *valid and enforceable* that it is binding upon the principal. (*Contant* v. *Wallace,* 62 Cal. App. 768 [217 Pac. 1081].) It may not be said that a contract to exchange specifically described properties is enforceable against a party who owns no title therein. The defendants had no opportunity in the present case to accept Moorhead. Their contract with the plaintiff was to pay broker's commissions for procuring the acceptance of the *owners* of the Los Angeles and Hollywood properties. In 9 C. J. 587, section 85, it is said: ''As a general rule a broker is not entitled to compensation until he has performed the undertaking assumed by him; and in the absence of any contrary provision in his contract, it matters not how great have been his efforts nor how meritorious his services; if he is

unsuccessful in accomplishing the object of his employment he is not entitled to compensation. The right to compensation depends on a performance of the stipulations and conditions of the contract of agency, and the broker must act strictly according to the authority conferred on him by the principal.''

For the reasons that it appears the plaintiff failed to fulfill the terms of his employment or procure an enforceable acceptance of the contracts by the owners of the respective properties, and because the evidence is lacking of the wife's authority to bind her husband to pay commissions by her written employment of a broker, the findings and judgment are not supported by the record.

The judgment is therefore reversed.