[Civ. No. 6708. Second Appellate District, Division Two.—October 30, 1931.]

A. L. JAMESON & COMPANY (a Corporation), Respondent, v. L. V. REDFIELD, Appellant.

Culbert L. Olson for Appellant.

Moote & Longcroft for Respondent.

Ackerman, Wayland & Mathews, Bianchi & Hyman, Heller, Ehrman, White & McAuliffe, Pillsbury, Madison & Sutro, Marshall P. Madison and F. David Mannoccir, *Amici Curiae*.

CRAIG, Acting P. J.—The defendant appealed from a judgment rendered by the Superior Court of Los Angeles County in favor of the plaintiff for moneys alleged and found to have been expended in his behalf.

The action arose out of certain purchases and sales, made for the defendant by the plaintiff as broker, of various listed and unlisted stocks, as security for which transactions the former had hypothecated with said broker several thousand shares of other stock. It appeared from an order signed by the parties and written notices or confirmations introduced upon the trial that there were many entries during the first nine months of 1928 of purchases and sales on margin for appellant's account. Said order contained an agreement, reciting in part:

"This order or deal has been executed or made subject to following conditions and agreements, to wit:

"(a) That all orders or agreements for the purchase or sale of any article, commodity, security, stock or bond, are received and executed subject to the rules and customs of the exchange or market, and its clearing house, if any, where they are executed, and with the distinct understanding that actual delivery is contemplated, and such is understood and agreed to by the party giving the order; (b) that all securities from time to time carried in our customer's marginal account, or deposited to protect the same, or otherwise deposited with us, may be loaned by us, or may be pledged by us either separately or together with other securities, either for the sum due thereon or for a smaller or greater sum, all without further notice to our customers; (c) that we may close out our customer's account by buying or selling at public or private sale without any further call or notice to the customer, if we deem it advisable for our protection; (d) it is understood that all securities carried in this account or deposited to secure the same may be carried in our general loans or miscellaneous accounts and

may be sold or bought at public or private sale, without notice to the customer, when such sale or purchase is deemed necessary by us for our protection; . . . ''

Nearly all of the orders to respondent's representatives for the sale or purchase of stock for appellant were given orally, either by telephone or in person; and the repurchase and resale thereof were effectuated in like manner, as the market might indicate the possibility of profit, or of too great loss should the items be longer retained. An assistant broker of the respondent company testified that: ''A couple of days prior to September 14th, . . . Redfield came down to the exchange again, and he had a policeman call me to the door, and he said: 'Well, if the market goes any higher I won't be able to take care of that margin; I can take care of it now, so you better go in and buy these stocks in for me,' and I asked him what stocks he wanted me to buy in, and he read them off and I had the cards with me, and wrote down the different stocks that he mentioned.'' ''Mr. Redfield came to the office and told me that he didn't have enough money to pay us what he owed us on the account, and he wanted to know if we couldn't carry him for awhile on what he had up there, and I told him we couldn't, . . . he said he wasn't able to take care of those accounts, that if he paid us what he owed us at this time, he would be entirely broke and he wouldn't be enabled to continue his operations on the street. . . . We figured out just what he owed us.'' An itemized accounting between the parties which was at that time balanced from the books in appellant's presence was introduced in evidence, showing the amount of $8,538.56 due from him to the brokers after the above-mentioned purchases had been made. The respondent sold at its market price appellant's collateral, which reduced said indebtedness to $5,513.25, but retained 102½ shares designated as E. G. B. Company stock upon which respondent collected a dividend in the form of a check payable to appellant, which said check he declined to indorse and so permit of further reduction of the obligation. Said stock and dividend were attached by the plaintiff in this action.

The question of validity of such transactions, we think is not affected by the statute of frauds. Upon similar facts our Supreme Court upheld a judgment for commissions by a decision which announced the rule since applied in other jurisdictions and which does not appear to have been over-

ruled in this state. (*Kutz* v. *Fleisher*, 67 Cal. 93 [7 Pac. 195].) As there stated: "It was not a case of a sale of personal property by a vendor to a vendee, but of a broker (plaintiff) purchasing and selling stocks for account of another (defendant), advancing money for the purpose, and paying assessments on the stocks purchased. The whole transaction was had under an agreement entered into in advance of the purchases being made. It was no part of the terms of the agreement that it was not to be performed within one year from the making thereof. On the foregoing facts, it follows that section 26 of article IV of the Constitution; section 1624, subdivisions 1, 4 of the Civil Code; section 1793, subdivisions 1, 4 of the Code of Civil Procedure, have no application in this case. The agreement as enforced could be made by parol, and therefore section 1739 of the Civil Code has nothing to do with the case." Numerous cases are cited by Meyer on the Law of Stockbrokers and Stock Exchanges, to the same effect, at page 243.

It is contended that the sale of appellant's collateral by the respondent was unauthorized, and that it was illegal because not made in accordance with the provisions of sections 3002 and 3005 of the Civil Code, requiring notice and a public auction of pledged personal property. It is not denied, however, that the parties became bound by the understanding and agreement permitting such sales "at public or private sale without notice to the customer when such sale or purchase is deemed necessary by us for our protection", under which respondent served the appellant for many months in effecting scores of transactions, nor is it contended that such agreement was in any manner violated or that it was invalid. (Civ. Code, sec. 3003.)

The appellant alleged by cross-complaint that Jameson & Company held the check for dividends above mentioned, and demanded judgment for the amount represented thereby. An adverse finding of the trial court is assigned as reversible error, but by no argument or authority is an obligation of the respondent legally established upon the transaction concluded by appellant as heretofore observed.

We find no prejudicial error in the findings or judgment.

The judgment is affirmed.

Thompson (Ira. F.), J., and Fricke, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 28, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1931.