[Civ. No. 11566. First Dist., Div. Two.—April 17, 1941.]

RUTLAND, EDWARDS & CO. (a Corporation), Respondent, v. PAUL E. COOKE et al., Appellants.

O. COOKE, Appellant, v. RUTLAND, EDWARDS & CO. (a Corporation), Respondent.

H. C. Millsap and W. E. Lady for Appellants.

Jennings & Belcher for Respondent.

NOURSE, P. J.—From a judgment in favor of the plaintiff in litigation involving a brokerage account the defendants have appealed.

In April, 1936, Paul E. Cooke and Olivette Cooke, his wife, commenced dealings with Rutland, Edwards & Co., a corporation, which was acting as a securities broker in the city of Los Angeles. After that date many different transactions were had. Among others on February 28, 1937, Mrs. Cooke ordered the plaintiff to purchase 200 shares of Richfield Oil, new. The certificate, under the directions of Mrs. Cooke, was made in the name of Mrs. Cooke and when received was, under the directions of Mrs. Cooke, held by the plaintiff in Mr. Cooke's account. On March 2d Mr. Cooke ordered the plaintiff to purchase 100 shares Baldwin Locomotive Works. The purported certificate was made in the name of Mr. Cooke and when received was also placed in his account. On March 9, 1937, Mr. Cooke ordered the plaintiff to purchase 500 shares Baldwin Locomotive Works. The purported certificate was made in the name of Mr. Cooke and when received was placed in his account. On the 22d day of March, 1937, Mrs. Cooke ordered the plaintiff to purchase 500 shares of Occidental Petroleum. Under the directions of Mrs. Cooke the certificate was made in her name and when received was, under her directions, placed in Mr. Cooke's account. On September 21, 1937, the plaintiff offered to deliver the certificates to Mr. and Mrs. Cooke and demanded the payment of $19,220 claimed to be due and payable. On the 24th day of September Mrs. Cooke, through her attorney, wrote to the plaintiff denying responsibility for the amount due on the Baldwin

Locomotive Works stock. In that connection it may be said
that cash payments had been made to the plaintiff and that
the amount remaining unpaid on the entire account, $19,220,
coincided with the purchase price of the Baldwin stock.
After receipt of the letter written by Mrs. Cooke negotiations
between the parties ceased. On the 19th day of June, 1937,
Mrs. Cooke commenced an action in the municipal court
against the plaintiff. She pleaded two counts. In each she
sought to recover $1510. In the first count she pleaded a
cause of action for money had and received. In the second
count she pleaded a cause of action for breach of contract
for failure to deliver 100 Richfield Oil, new, and 500 Occi-
dental Petroleum alleged to have been bought and paid for.
On June 30, 1937, the plaintiff filed an answer in the mu-
nicipal court pleading the contract relating to the sale of the
Baldwin stock hereafter referred to. Still later, on October
1, 1937, it filed this action. In the first count it pleaded the
facts showing the purchase of the several items of stock above
mentioned, the failure of defendants to pay the balance due,
its demand made, a sale for defendants' account at a price
of $8,436.96, and a balance due of $10,783.04. It also pleaded
the pendency of the action in the municipal court. In its
second cause of action it pleaded a common count as for
moneys laid out and expended for the account of the defend-
ants. The defendants answered the plaintiff's complaint.
Thereafter the trial court made an order consolidating the
two actions for trial. On the trial, after fully hearing both
parties, the trial court made findings in favor of Rutland,
Edwards & Co., and from the judgment entered Mr. and Mrs.
Cooke have appealed.

██ The trial court made a finding that the facts showed a
joint adventure. The defendant, Mrs. Cooke, contends that
the evidence does not support that finding. We think her con-
tention may not be sustained. The fact that she asked the
plaintiff to obtain certificates in her name is not sufficient to
support her present contention. All the other facts, and they
are numerous, tend to support the finding made by the trial
court. The conflict, if any, was addressed to the trial court
and may not be disturbed by this court.

In their closing brief the appellants for the first time
argue that the contract for the sale of the Baldwin stock
was unenforceable because of the statute of frauds. Section

1624a of the Civil Code is the particular section relied on. This section reads in part: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods . . . or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. . . . There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

The record is clear that the transaction regarding 100 shares of the Baldwin stock was a brokerage contract. It was not necessary that it should have been in writing. (*Kutz* v. *Fleisher*, 67 Cal. 93 [7 Pac. 195]; *A. L. Jameson & Co.* v. *Redfield*, 118 Cal. App. 59, 61, 62 [4 Pac. (2d) 817].) There are three equally sound answers to appellants' argument as to the sale of the 500 shares—their failure to raise the issue, their waiver of the defense, and their acceptance of the goods sold.

The complaint of Rutland, Edwards & Co. alleges that on March 9, 1937, the defendants "instructed plaintiff to purchase and to sell to defendants, through the said account of defendants, five hundred (500) additional shares of new Baldwin Locomotive Works common stock on a 'when, as and if issued' basis." The answer pleads that, on the day stated "an oral agreement was made and entered into between plaintiff and defendant, Paul E. Cooke, by the terms of which plaintiff agreed to sell and Paul E. Cooke agreed to buy (said amount of Baldwin stock) at the price of Thirty-two and 50/100 (32.50) Dollars per share, payable upon delivery of said stock." If this may be deemed a sufficient pleading to raise the defense of the statute it was not so treated by the pleader during the trial and no suggestion of the issue was made to the trial court and no finding was made thereon. The same situation was presented in *English* v. *Shipley*, 71 Cal. App. 45, 49 [234 Pac. 334], where we held that the defense of the statute of frauds may not be raised for the first time on appeal. Here the circumstances are somewhat more compelling since the question was not raised except in appellants' closing brief.

■■ But, if we overlook the time and matter of presentation, we cannot escape the conclusion that the question is without merit for these two reasons: (1) the appellants by their language and conduct led the respondent to make expenditures in the purchase of the shares of stock upon the supposition that the contract was to be carried into execution and for that reason they are estopped to deny the contract. (Section 1962, subd. 3 of the Code of Civil Procedure.) (2) After the respondent had purchased the shares on the New York market and had become obligated to the New York brokers for the purchase price thereof they notified the appellants that the stock had increased on the market and that a sale could then be made for appellants' profit. The appellants instructed the respondent at the time to hold the stock for them in anticipation of a higher raise. 100 shares of the Baldwin stock had been purchased by respondent for appellants at $29.50 a share, and 500 shares had been purchased at $32.50 a share. Some time in March, 1937, the two appellants came to the office of respondent and inquired about the market quotations of the stock at that time. One of the employees of the defendant testified: "I told them that this stock was bid at 33¾ and that was a profit to them on all their stock, and they said, 'Well, the profit is not big enough. It is more like chicken feed', as I remember the statement." This alone is sufficient to bring the case within the exception of section 1624a of the Civil Code as an expression of "by words or conduct his assent to becoming the owner of those specific goods."

■■ The appellants attack the findings that respondent purchased the 600 shares of Baldwin stock as directed, and tendered it to appellants who refused to accept it. The material circumstances relating to these findings are that all parties agreed that this stock was to be purchased and sold on a "when, as, and if issued" basis; that it was known at the time that certificates of free stock were not being dealt in, but that a pool was in force through which evidences of the stockholders' interests were issued in the form of voting trust certificates. This pool was broken on September 1, 1937, but, on September 24th the New York brokers delivered to respondents voting trust certificates for the full 600 shares. On September 21st, and before such delivery was made, the

respondent tendered the stock to the appellants. The form of the tender, which was in writing, reads:

"Mr. and Mrs. Paul E. Cooke

"607 South Dunsmuir Avenue

"Los Angeles, California.

"Dear Mr. and Mrs. Cooke:

"We now have ready for delivery to you certificates evidencing the ownership of 600 shares of the new Baldwin Locomotive Works common stock.

"We now make demand upon you and each of you for the payment of the sum of $19,220 in payment for same.

"Unless said payment is made within five days from delivery hereof to you, we shall dispose of said stock and all other holdings in your accounts and expect payment of the balance remaining due us without further notice.

"Very truly yours,

"(Signed) F. J. RUTLAND

"F. J. RUTLAND,

"President."

The only reply was made by Mrs. Cooke through her attorney. This reads:

"Rutland, Edwards & Co.,

"630 West 6th Street,

"Los Angeles, California.

"Gentlemen:

"Receipt of registered letters Nos. 226935 and 229636 addressed to Mr. and Mrs. Paul E. Cooke in care of this office is acknowledged.

"I do not represent and at no time have represented Mr. Cooke and have no authority to act for him in any capacity whatever. I have heretofore instituted an action on behalf of Mrs. Cooke against the Rutland, Edwards & Co. to recover certain stock, or the value thereof, which Mrs. Cooke claims was sold to her.

"I have advised Mrs. Cooke of receipt of this letter and I am authorized to state that she, at no time, entered into any contract or agreement for the purchase of certificates evidencing the ownership of 600 shares of the new Baldwin Locomotive Works common stock, or any contract or agreement of any kind relating to Baldwin Locomotive Works stock and she denies that she is indebted to you in any sum

on account of any such contract and likewise denies your right to sell or dispose of any stock for the sum alleged or claimed by you to be due and unpaid for the purchase of said Baldwin Locomotive stock or otherwise.

"Very truly yours,
"(Signed) H. C. MILLSAP."

It will be noted that no objection was made to the form of the "certificates evidencing the ownership" of the shares. In fact no objection was made to their form at any time until this litigation arose. It is a matter of common knowledge that when the pool should be broken these voting trust certificates could be transferred on the books of the corporation with little difficulty. The pool having been broken on September 1st and the tender made on September 21st the respondent could have effected the transfer if it had known that certificates of stock were desired by the appellants. The sale having been made on a "when, as and if" basis the appellants became liable for the shares "as" issued, that is to say, when the tender was made on September 21st the contract was complete so far as respondent was concerned and a tender of delivery of such certificates as were issued at that time was a good tender under the terms of the contract calling for the shares "when, as, and if" issued. But the question as to the tender is answered by the express provision of section 2076 of the Code of Civil Procedure, which reads: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

With this principle in mind the conclusion follows that the findings of the trial court are supported because of either one or both of the following circumstances—if under the terms of the contract it should be said that respondent was required to deliver certificates of shares of stock free from any voting trust the evidence clearly demonstrates that none of the contracting parties mentioned that fact to the other at any time during the transactions; that, if the appellants had so interpreted the contract and had expressed that view either before or at the time of the tender, the respondent could have

fulfilled the contract under those terms. Secondly, the evidence discloses that during the several months in which these transactions were had the parties were dealing in numerous other stocks which sales were marked "free"; that the Baldwin stock sale was marked "when, as and if issued." It is inconceivable that the parties did not know that there was some difference, and so when the transaction was marked "when, as and if issued" the parties contemplated and understood just what the plain words implied—that the sale was on that basis and would be deemed complete upon delivery of such evidences of ownership "as" should be issued and sold on the market.

Furthermore, it is in the evidence that the respondent, acting upon the instructions of appellants, went into the New York stock market and purchased 100 shares of Baldwin stock on March 9, 1937, and 500 shares on March 11, 1937; that confirmation of these purchases was immediately made to the appellants disclosing the name of the New York brokers and that the stock was "new common" taken on a "when, as, and if issued" basis; that certificates of stock free from the trust pool were not on the market for sale until some time in September, 1937, and after the pool was dissolved; that, on June 30, 1937, the respondent pleaded in its answer filed in the municipal court action the fact that the stock had not then been issued, and no objections were raised by appellants to the form of the certificate, or the sufficiency of the tender, until these actions were tried in May, 1938. The transcript plainly discloses that the trial court did not accept the testimony of the appellants either upon the issue of their joint adventure, or upon the issue of the interpretation of the contract.

The judgment is affirmed.

Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 12, 1941.