SUNSET–STERNAU FOOD CO., a corporation, Appellant,

v.

AMERICAN ALMOND PRODUCTS CO., Inc., a corporation, Appellee.

No. 15690.

United States Court of Appeals
Ninth Circuit.

Aug. 18, 1958.

Raymond J. O'Connor, San Francisco, Cal., for appellant.

Eisner & Titchell, Norman A. Eisner, San Francisco, Cal., for appellee.

Before ORR, POPE and FEE, Circuit Judges.

ORR, Circuit Judge.

This appeal involves the question of whether the trial court was in error in finding that appellant and appellee entered into a binding contract for the sale by appellant to appellee of 75 tons of apricot kernels and, if there was such a contract, whether it was breached.

The transaction between the parties was handled by the brokerage firm of Prince, Keeler & Co., Inc., of New York City, hereafter the brokerage firm. The negotiations between the parties were initiated at a meeting in July 1955 between a representative of appellant, a representative of the brokerage firm, and a representative of appellee, with the purpose of interesting appellee in the purchase of apricot kernels. At the time of this meeting a small sample of the kernels was exhibited to the representatives of appellee. On July 25, 1955, the brokerage firm wrote appellant that appellee was interested in the kernels but would want 200 pounds of the kernels for a sample testing.

On August 22, 1955, appellant wrote the brokerage firm that it hoped to ship the 200 pound sample and asked to be advised of opening prices on the product, claiming it was a new item for them. The brokerage firm on August 1, 1955, advised appellant by wire that the price of kernels was 17 cents per pound and that appellee would buy at that price, subject to the approval of the 200 pound sample. The brokerage firm was on the same date advised by appellant that the

200 pound sample had been shipped and that the price was 18 cents per pound. Further negotiations followed, resulting in the brokerage firm issuing a "Bought-Sold Note" which was held by the trial court to have constituted a contract between the parties.

There is little if any dispute as to the facts, appellant's contention being that as a matter of law no contract was created between the parties because the negotiations between them did not culminate in an agreement on the terms and conditions sought to be imposed by each of the parties.

The resolution of the question before us lies in the determination of whether the "Bought-Sold Note" constitutes an enforceable contract of sale. There is evidence in the record of a substantial nature that the brokerage firm was authorized, in a telephone conversation had with appellant, to consummate a deal with appellee for the sale of the kernels. Acting upon such authorization the brokerage firm made an offer to appellee by telephone which was accepted by appellee.

In support of its contention that no contract was created, appellant argues that:

1. "There was not an offer and acceptance with respect to all given terms and hence no meeting of the minds with regard to material terms of the alleged contract."

2. The parties intended and understood that any agreement which might be made between them would be evidenced by a formal contract in writing submitted by appellant and executed by both parties, which was not done.

3. Trade custom and usage could not be relied upon to supply an important and material part of the alleged contract.

4. The alleged contract, required by the Statute of Frauds to be in writing, was not so executed and the alleged agent of appellant, the brokerage firm, did not have the authority and relationship of an agent with appellant sufficient to bind it to the alleged contract.

The brokerage firm had no written authority from appellant. It is agreed that California law, West's Ann. Civil Code § 2309, controls in this case. However, under California law, a party to a contract may be estopped from relying on West's Ann.Civil Code § 2309, which is a special enactment without counterpart at common law. Hunt Foods, Inc. v. Phillips, 9 Cir., 1957, 248 F.2d 23; Moore v. Day, 1954, 123 Cal. App.2d 134, 266 P.2d 51. It is our belief that a California court would recognize an estoppel under these circumstances to prevent this section being used in perpetrating a fraud.

There is no question but what appellee has been substantially damaged by the failure of appellant to deliver the kernels. The market value of the kernels rose from 17½ cents to 43 cents per pound during the time appellee was waiting for appellant to deliver. In addition, as also applies to other contentions of appellant, there was a repeated recognition and ratification of the contract, in writing as well as orally. In issuing the Notes, the broker acted as agent of both parties. It is abundantly clear that appellant so recognized this agency by subsequent ratification of the agent's acts. Kelley-Clarke Co. v. Leslie, 1923, 61 Cal.App. 559, 215 P. 699.

In sending the "Sold Note" to appellant the broker referred to it as the "contract". This Note was retained by appellant without comment or objection. The record discloses that it is the usual practice for a broker's memorandum to be the sole evidence of a contract and that the "Bought-Sold Notes" in the instant case are the usual type of "Bought-Sold Notes" used in New York City. That appellant recognized the Notes as constituting a contract is shown by a letter of September 21, 1955, to the broker, wherein appellant asked to be released therefrom. In a letter dated October 12, 1955, appellant acknowledged that appellee had purchased the kernels. Further letters dated October 31, and November 4, 1955, were to the same effect and this information, as authoriz-

ed by appellant, was made known to appellee by the broker during the ensuing negotiations. In addition, during a conversation in California with an agent of appellee, appellant's president, Mr. Sternau, gave assurances that delivery would be made.

Appellant argues that the "Bought-Sold Notes" could not have been the contract of the parties because appellee was insisting upon a provision that no more than 5% broken kernels by weight appear in the lot furnished. This provision does not appear in the "Bought-Sold Note" but is implied from the term used therein, "regular apricot kernels," by the custom and usage of the trade. This usage was substantially established.

Appellant asserts that California law does not sanction proof of trade custom to supply provisions to contracts, but only to interpret existing provisions. However, the trade custom was properly considered here to interpret the meaning in the trade of the descriptive phrase, "regular apricot kernels," as used in the broker's Notes. Pastorino v. Greene Bros., 1949, 90 Cal.App.2d 841, 204 P.2d 368.

Further, it is said that the custom was not known to appellant and that knowledge is necessary under California law, citing among other cases, Robertson v. Dodson, 1942, 54 Cal.App.2d 661, 129 P.2d 726. And see Miller v. Stults, 1956, 143 Cal.App.2d 592, 300 P.2d 312. This is not so if the custom is general or well known in the community or among the trade of which the party is a member, since the party may then be presumed to have knowledge. Pastorino v. Greene Bros., supra; Callahan v. Stanley, 1881, 57 Cal. 476, 479. While it is true that appellant had not theretofore sold apricot kernels, it had for many years purchased them. In fact, machinery which appellant had used in the business of making paste from the kernels was still on the premises after this contract was made.

In seeking the inclusion of the 5% provision in the written contract, appellee was asking no more than had been provided in the broker's Notes.

Another argument made by appellant is that it was under no obligation to make tender under the contract because various necessary conditions precedent to this obligation were not present.

The broker's Note contained the phrase "Subject To Confirmation of Seller." While this confirmation was never expressly given, upon receipt of the note appellant immediately forwarded the formal contract forms, thereby indicating its willingness to go through with the sale, and this, together with appellant's continued recognition of the contract, sustains the finding that the confirmation was given.

Second, typed in on the Note was the phrase, "Subject to approval by Buyer of two bags now enroute as samples to Buyer." Appellee approved the sample as to "type" but informed the broker that the sample contained broken kernels in excess of 5%. It was shown that such samples were used by the trade only to indicate "type" and that the percentage of broken kernels in the sample had nothing to do with the percentage which could be present in the goods as ultimately delivered, hence the sample was properly approved.

Third, further argument is made that the parties contemplated that no contract would exist until formal contracts were signed. The broker's Notes specified that "This memorandum shall be subordinate to a more formal contract if and when such contract is executed; in the absence of such contract, this memo. represents the contract of the parties." Appellant's subsequent actions are consistent with its acceptance of this provision, as evidenced by its failure to raise objection to this clause and its continued recognition of the existence of the contract.

This evidence substantially supports the finding that the necessary conditions precedent to the necessity of making a tender were present.

Affirmed.