[S.F. No. 21499.  In Bank.  Feb. 18, 1964.]

SUNSET-STERNAU FOOD CO., Plaintiff and Respondent, v. RUDY BONZI, Defendant and Appellant.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux

& Goldstein, E. Dean Price, Zeff, Halley & Price and Albert E. Levy for Defendant and Appellant.

Cleveland J. Stockton, Haskell Titchell and Eisner & Titchell for Plaintiff and Respondent.

TOBRINER, J.—The main issue in this appeal turns upon whether a section of the statute of frauds, Civil Code section 2309, applies to an oral agency agreement and prevents the agent from suing the undisclosed principal on an implied promise of indemnity. Although section 2309 does not clearly specify whether it covers only the agent's authority to bind the principal to a third party or extends to the relationship between the agent and the principal, we believe it is confined to the agent's power to bind the principal only. The wording of the section, its placement in the code, a reluctance of the cases and commentators to give broad sweep to statutes which render oral agreements unenforceable, and the California decisions which have heretofore unanimously held section 2309 not applicable to agency agreements, sustain this conclusion.

We find no merit in three subsidiary points raised by defendant: (1) that the statute of limitations bars the cause of action for indemnity; (2) that another action pending between the same parties precludes the present action; and (3) that plaintiff's failure formally to notify defendant of the third party's suit against plaintiff destroys its cause of action for indemnity.

Defendant Rudy Bonzi entered into an oral agency agreement with plaintiff Sunset-Sternau that plaintiff act as his agent in the procurement of a buyer for his apricot kernels. The parties agreed that plaintiff would deal in its own name because it was well known in the field. Pursuant to the agency agreement plaintiff elicited an offer of 17 cents a pound from American Almond Products Co. Inc. (hereinafter called Almond Products). After obtaining approval from defendant undisclosed principal to sell for 17½ cents, plaintiff entered into a written contract in its own name with Almond Products for the sale of 75 tons at that price.

Subsequently, a fire destroyed a substantial portion of the California apricot pit and kernel stock, and the price of apricot kernels rose rapidly. Defendant did not deliver the kernels on the contract date. Plaintiff's attorney notified defendant that Almond Products intended to sue plaintiff and in that event plaintiff would join defendant as cross-defendant.

All parties then attended a settlement meeting at which

plaintiff offered to forego its commission if defendant would deliver. Although defendant questioned neither the authority of plaintiff to act as agent nor the validity of the contract of sale, he would not commit himself as to delivery. The next day defendant said he still would not deliver.

At the time of the fire defendant possessed an inventory of 541 tons of dried pits which when processed would yield 108 tons of kernels. About a week after the fire he sold 431 tons of dried pits to another buyer for 46 cents a pound. After the meeting he sold the remaining pits for 65 cents a pound. He obtained a total remuneration of $52,602 for his inventory. If he had fulfilled the contract, he would have received $26,750, less the cost of cracking the pits.

Almond Products successfully sued plaintiff in the United States District Court for damages resulting from the breach of contract and recovered $41,309.10. Plaintiff unsuccessfully appealed (*Sunset-Sternau Food Co.* v. *American Almond Products Co.* (1958) 259 F.2d 93) and then satisfied the judgment.

Plaintiff sued defendant for indemnity. At the trial defendant admitted the making of the oral agreement and knowledge of its terms. He also admitted that he knew of the provisions of the contract entered into by plaintiff and Almond Products. Plaintiff's cause of action rested upon the implied promise of indemnity and reimbursement from a principal to an agent for liability incurred as a result of the performance of the agency agreement. The court rendered judgment for plaintiff in the sum of $48,641 plus prejudgment interest and costs. Defendant has appealed.

Normally an agent who becomes personally liable for the performance of a contract which he has undertaken for his principal may hold the principal for indemnity for damages sustained because of breach of that contract. (*Rimington* v. *General Acc. Group of Ins. Cos.* (1962) 205 Cal.App. 2d 394 [23 Cal.Rptr. 40]; Rest. 2d Agency, §§ 438, 439, pp. 322-334.) We must determine here, however, whether the possible application of Civil Code section 2309 to an oral agency agreement involving the sale of personal property[1] negates the principal's liability. That section provides: "An oral authorization is sufficient for any purpose, except that an *authority to enter into a contract* required by law to be in

---

[1]An oral agency agreement involving the sale of real property is specifically invalidated by Civ. Code, § 1624, subd. 5, and its counterpart, Code Civ. Proc., § 1973, subd. 5.

writing can only be given by an instrument in writing." (Italics added.)

Plaintiff concedes that since the contract concerning the apricot kernels exceeded the amount of $500 it was "a contract required by law to be in writing."[2] It argues, however, that section 2309 only precludes liability of the principal *to the third party* on the contract entered into by the agent and does not affect the *agency agreement* between *agent and principal*. Defendant counters that an oral agency agreement to enter into a contract required by law to be in writing creates no enforceable agency.

■ We must, of course, apply the California statute of frauds to a situation which is precisely covered by the language of the statute. If the extent of coverage is unclear, however, we know of no policy reasons which compel a resolution of the ambiguity in favor of its wide application.[3]

■ The language of section 2309 is unclear; it discloses ambiguity on its face. The section commences with a broad statement of enforceability, i.e., "An oral authorization is sufficient for any purpose . . . ." Next follow words of limita-

---

[2]See Civ. Code, § 1624a and § 1724 and their counterpart Code Civ. Proc., § 1973a.

[3]The commentators almost unanimously urge that considerations of policy indicate a restricted application of the statute of frauds, if not its total abolition. "[T]he prevailing feeling both in the legal and commercial world, is and for a long time has been, that these clauses have outlived their usefulness, and are quite out of place amid the changed legal and commercial conditions of today." (6 Holdsworth, History of English Law (1924) 396.) ". . . The writer's study of the cases, above referred to, has fully convinced him as follows: 1. that belief in the certainty and uniformity in the application of any presently existing statute of frauds is a magnificent illusion; 2. that our existing judicial system is so much superior to that of 1677 that fraudulent and perjured assertions of a contract are far less likely to be successful; 3. that from the very first, the requirement of a signed writing has been at odds with the established habits of men, a habit of reliance upon the spoken word in increasing millions of cases; 4. that when the courts enforce detailed formal requirements they foster dishonest repudiation without preventing fraud; 5. that in innumerable cases the courts have invented devices by which to 'take a case out of the statute'; 6. that the decisions do not justify some of the rules laid down in the Restatement of Contracts to which the present writer assented some 20 years ago." (Corbin, *The Uniform Commercial Code—Sales*; *Should It Be Enacted?* (1950) 59 Yale L.J. 821, 829.) To the same effect: Willis, *The Statute of Frauds—A Legal Anachronism* (1928) 3 Ind. L.J. 427, 528, 540-542; Note (1928) 13 Cornell L.Q. 303. See also Sixth Interim Report of the 1937 English Law Revision Committee, 3 Cmd. No. 5449 (1937) reprinted in (1937) 15 Can.B.Rev. 585.

tion, i.e., "... *except* that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." (Italics added.) This language does not literally tell us whether the Legislature meant merely to foreclose the enforcement of the ultimate contract by the third party against the principal or additionally to prevent enforcement of the agency agreement by the agent.

Two factors, however, point to the more restricted view. In the first instance, the word "authority" is a technical term used in the law of agency to refer to the power of the agent to obligate the principal to a *third party*. Thus it does not apply to the obligations between the *principal* and *agent*. In the second instance, the code commissioners' notes concerning the chapter of the title, which includes section 2309, state: "Under this heading, the representation of one person by another is the only subject treated.... The mutual relation of *principal and agent* are a branch of Service and are defined in the Title on that subject."[4] (Italics added.)

An unbroken line of California cases supports the resolution of the ambiguity in the manner above stated: section 2309 does not apply to the agency agreement between principal and agent. Thus in the early case of *Kutz* v. *Fleisher* (1885) 67 Cal. 93 [7 P. 195], a stockbroker orally agreed to buy, sell and pay assessments on stock for his client. The broker expended funds which the client refused to pay; the broker sued. In granting relief the court held that the statute of frauds did not bar recovery, stating: "It was not a case of a sale of personal property by a vendor to a vendee, but of a broker (plaintiff) purchasing and selling stocks for account of another (defendant)...." (At p. 93.)

Although the court in *Kutz* did not specifically mention section 2309, subsequent cases have held that this section does not indicate a different result. In *A. L. Jameson & Co.* v. *Redfield* (1931) 118 Cal.App. 59 [4 P.2d 817], defendant had orally authorized "certain purchases and sales, made for the defendant by plaintiff as broker, of various listed and un-

[4]II Civil Code of California (1872) 63. Civ. Code, § 2019 in the title on service reads: "An agent must not exceed the limits of his actual authority, as defined by the title on agency." This section does not warrant incorporating the § 2309 restriction into the title on service since it assumes a valid agency relationship, and thus incorporates only those sections in the title on agency dealing with actual authority. (Civ. Code, § 2316 et seq.) At the most this section presents the same problem of resolution of ambiguity as that posited by § 2309.

listed stocks.'' (P. 60.)[5] Thereafter defendant could not pay the broker the amount he owed upon the account. The court, after originally holding the action barred by section 2309, reversed itself upon rehearing and, relying on *Kutz*, upheld the right of the stockbroker to recover his losses from the principal. It stated ''The question of validity of such transactions we think is not affected by the statute of frauds.'' (118 Cal.App. at p. 61.)[6]

The analogous case of *Meadows* v. *Clark* (1939) 33 Cal. App.2d 24 [90 P.2d 851], involved a broker who, pursuant to an oral agreement, found, and entered into a contract with, a buyer for the sale of defendant's cattle. Defendant performed the contract but refused to pay the commission. Following the reasoning of *Kutz* and *Jameson*, the court sustained the validity of the oral agency agreement and granted the plaintiff broker the recovery of his commission. As further support for its holding the court relied on the fact that Civil Code section 1624, subdivision 5, expressly requires that an agency agreement for the sale of real property for compensation be in writing although no such code section pertains to personal property. The court reasoned that the absence of such a statutory mandate demonstrated the legislative intent to sanction and sustain an oral agency for the purchase and sale of personal property.[7]

Similarly, the court in another action for the recovery of commissions, *Marks* v. *Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 823 [205 P.2d 1025], stated, ''Although the plaintiff is prevented by the statute of frauds from recovering a commission on the sale of the real estate there is no such barrier in this case to his recovery of a commission on the sale of personal property as to which no written memorandum is required''.[8]

---

[5]The parties had signed an underlying written agreement stating that future transactions were subject to specified rules and that any security for these future transactions was subject to certain restrictions.

[6]See also *Davidson* v. *Kessler* (1935) 10 Cal.App.2d 89 [51 P.2d 174], in which the court allowed recovery for *breach* of an oral agreement to find a buyer.

[7]See 3 Williston, Contracts (3d ed. 1957) § 512, pp. 654-655, where the author citing, among other cases, *Meadows* v. *Clark, supra*, states: ''A contract creating an agency to sell goods is not a contract for the sale of goods and is not within the ᵤtatute.''

[8]See also *Dabney* v. *Edwards* (1935) 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822] (oral agreement to sell oil leases, which are chattels real, supports suit for recovery of commissions); *Webster* v. *Parra* (1925) 72 Cal.App. 639 [237 P. 804] (suit for recovery of commission for sale of

Defendant attempts to distinguish *Meadows* v. *Clark, supra,* on the ground that it involved the recovery of a commission by the agent for finding a purchaser in a situation in which the principal entered into a contract with the third person, whereas the instant case involves a principal who refuses to be bound by the contract between the agent and the third party. The court in *Meadows* v. *Clark,* however, granted recovery not upon a theory of *quantum meruit* but upon the basis of the contract established there by an agency agreement. Moreover, the court in that case relied upon the fact that section 2309 does not apply to agency agreements. Thus a ruling that section 2309 prevented recovery would impliedly overrule a whole line of decisions.

Finally, defendant maintains that to allow indemnity between the agent and the principal based on the contract entered into between the agent and third party would be indirectly to permit the third party to hold the principal liable on the contract and thus completely to abrogate the effect of section 2309.

To allow indemnity in this situation is not, however, to abrogate the section. The section definitely curtails the third party's rights against the principal. The third party cannot successfully sue the principal; he cannot secure specific performance of the contract or obtain damages; he cannot enforce any ancillary contractual rights, such as attachment against the principal. Moreover, as we shall later explain, the

personal property pursuant to oral agreement). In discussing Civil Code section 1624, subdivision 5, which applies the statute of frauds to the agency agreement for the purchase or sale of real estate, Witkin explains: "(1) Obviously the provision does not apply to an *agreement for sale of personal property.* Thus, suppose an agency is orally created authorizing the agent for commission to buy or sell goods or choses in action of over $500 value. The contract of sale is within the statute of frauds, and the agency is consequently within the equal dignities rule (Civ. Code, § 2309; supra, § 105.) Hence, the *contract of sale,* even though in writing, will not bind the principal to the third party. But the oral contract of agency will bind the principal to pay commissions to the agent. In other words, except in the case of real estate agents, the statute of frauds *does not apply between principal and agent,* and the agent may recover. (*Meadows* v. *Clark* (1939) 33 Cal.App.2d 24, 29 [90 P.2d 851] [contract of sale carried out, but principal refused to pay full commission]; *A. L. Jameson & Co.* v. *Redfield* (1931) 118 Cal.App. 59 [4 P.2d 817] [client orally authorized stockbroker to execute 'short sale' of shares, and broker sued for losses sustained].) (See also *Rutland etc. Co.* v. *Cooke* (1941) 44 Cal.App.2d 258, 262 [112 P.2d 287]; 20 Cal.L.Rev. 563; 5 So. Cal.L.Rev. 233.)" (Witkin, Summary of Cal. Law (7th ed. 1960) 114.)

principal incurs no liability until the agent satisfies the third party's judgment against him. In the event of the agent's insolvency, the effect of the section on the principal's liability is formidable indeed. The section is not nullified, then, by our interpretation; it retains its effectiveness as a curtailment of the rights of the third party and as a potential limitation of the liability of the principal.

Furthermore, the third party can always obtain recovery against the agent in the present situation; any indirect benefit to the third party by the inapplicability of section 2309 therefore becomes irrelevant. The crucial question must be whether the principal or the agent will bear the loss. This question should be resolved by an appraisal of the rights, equities, and liabilities of the principal and agent and not by a determination as to whether the third party accomplishes indirectly that which he could not accomplish directly. The principal in this case is the moving party behind the transaction; he provided the impetus for the agent to enter into the contract. Surely he should be accountable for the liability incurred by the agent upon the agreement, particularly in the instance of the principal's own refusal to perform his obligation.

Authorities cited by defendant are not in point. Some such cases merely deal with the question of whether a third party may hold the principal on a contract entered into by an agent without written authority. (*Georgia Peanut Co.* v. *Famo Products* (1938) 96 F.2d 440; *McNear* v. *Petroleum Export Corp.* (1929) 208 Cal. 162 [280 P. 684]; *Cooke* v. *Newmark Grain Co.* (1921) 54 Cal.App. 283 [201 P. 615].) Others turn upon whether the third party can hold the agent in an undisclosed principal situation. (*Murphy* v. *Helmrich* (1884) 66 Cal. 69 [4 P. 958]; *Coover* v. *Cox* (1928) 95 Cal. App. 1 [272 P. 343]; *London* v. *Zachary* (1949) 92 Cal. App.2d 654 [207 P.2d 1067].) The remaining cases involve the sale of realty which is covered by Civil Code section 1624, subdivision 5. (*McRae* v. *Ross* (1915) 170 Cal. 74 [148 P. 215]; *Henry* v. *Nelms* (1931) 113 Cal.App. 587 [298 P. 822].)

In summary, we do not believe that the Legislature intended the proscription of section 2309 to prohibit the enforcement of the agreement between the principal and the agent; indeed, the code commissioners state that this subject matter is covered by another part of the code. The California cases, over a period of 70 years, have uniformly recognized the agent's right to protection under such a contract as that

here; the decisions point out that the barrier to the recovery of the real estate agent, embodied in the code, has been deliberately omitted in the instance of the personal property transaction. The authorities emphatically hold the statute of frauds does not apply to the agreement between the agent and the principal.

No considerations of morality or business practice bolster defendant's position. We are confronted by a principal who, after persuading his agent to enter into a contract for the principal's benefit, refuses to perform the contract to the damage of the agent. We find neither statutory provision nor legal principle to sanction the profit which the principal thus derives from his wrong. "Surely the courts do not seek to invalidate bona fide transactions by the imported application of esoteric legalisms. Our task is not to block the business pathway but to clear it, defining it by guideposts that are reasonably to be expected." (*Wong* v. *Di Grazia* (1963) *ante,* pp. 525, 534 [35 Cal.Rptr. 241, 386 P.2d 817].)

We turn to defendant's three above mentioned subsidiary arguments. ▮ Defendant contends, first, that plaintiff's cause of action for reimbursement is barred by the statute of limitations. Neither party disputes that the two-year section applies.[9] Defendant, however, maintains that the statute commenced to run in 1955 when he repudiated the contract and refused to hold the agent harmless from the third party's demand for damages. Plaintiff claims that the cause of action did not accrue until plaintiff satisfied the judgment in 1958, less than two years before the instant action.

The implied promise of indemnity and reimbursement applies only to the actual loss and not to the liability incurred.[10] (*Walkof* v. *Fox* (1915) 90 Misc. 338 [153 N.Y.S. 27]; Rest. 2d Agency, § 438, com. c.) Thus the cause of action does not arise until the agent has actually paid the obligation. (Civ. Code, § 2778, subd. 2; *Thode* v. *McAmis* (1950) 96 Cal.App.2d 833 [216 P.2d 548]; *Walkof* v. *Fox, supra; Admiral Oriental Line* v. *United States* (1936) 86 F.2d 1; Rest. 2d Agency, *supra*; cf. *Pacific Employers Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1955) 228 F.2d 365 [implied indemnity in California tort case].) The cause of action for indemnity is not barred; it arose in 1958 when plaintiff satisfied the Almond Products judgment. Indeed, if the agent

[9] Code Civ. Proc., § 339, subd. 1.

[10] For an explanation of the difference between the two concepts see *Alberts* v. *American Cas. Co.* (1948) 88 Cal.App.2d 891 [200 P.2d 37].

could sue the principal for reimbursement prior to satisfying the outstanding obligation, he would either collect funds before incurring any expenditures and thus become unjustly enriched or would recover for a potential liability which might never mature.

We find no merit in defendant's second contention that plaintiff's recovery is barred because it failed to assert the instant cause of action in a case in 1957 in the municipal court between the same parties for the failure to pay for 60 tons of apricot pits. Not only are the two causes of action totally unrelated, one involving the yearly sale of plaintiff's apricot pits by plaintiff to defendant, and the other arising from the agency agreement to sell defendant's apricot kernels, but, as we have explained, the present cause of action did not accrue until 1958 when plaintiff satisfied the judgment.

Defendant finally contends that plaintiff did not give him formal notice of the pendency of the third party action and thus waived any right to recover reimbursement or costs of defending the suit. The agent's failure to notify the principal, however, merely requires that the agent prove that he tendered a reasonable defense. (Civ. Code, § 2778, subd. 6; *Eva* v. *Anderson* (1920) 166 Cal. 420 [137 P. 16]; Rest. 2d Agency, § 438, com. e, p. 326; Rest., Restitution, § 76, com. f, p. 339.) In the instant case the record supports the trial judge's finding that plaintiff defended the action vigorously and in good faith, raising all possible defenses and prosecuting such defenses through appeal.

In any event we doubt that formal notice would have affected the instant situation. Plaintiff gave defendant written notice of the threatened suit and of plaintiff's intention to hold defendant liable. Defendant participated in meetings with plaintiff and Almond Products at which time defendant was informed that Almond Products would file suit if defendant failed to deliver. Defendant refused to deliver and disassociated himself from plaintiff. Under these circumstances, plaintiff's failure to notify defendant could hardly have induced his inaction or have caused him prejudice.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peek, J., concurred.

PETERS, J.—I dissent.

Section 2309 of the Civil Code provides, and has provided

since 1872, that ''An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing.'' The majority hold that this section of our statute of frauds only applies to the contract between the principal of the orally authorized agent and the third party, and has no application to the oral contract of agency between the principal and his agent. As a result, if the contract between the agent and third party is in writing, and the third party recovers a judgment against the agent, then the agent may sue the principal for indemnity although the agent's authority to act was not in writing. This startling result is reached, not on the theory of waiver or estoppel, but on the ground that section 2309 has no application at all to the relationship between the principal and his agent! This conclusion is arrived at by reliance on what is referred to as an ''unbroken line of California cases,'' starting with the 1885 decision of this court in *Kutz* v. *Fleisher,* 67 Cal. 93 [7 P. 195]. That case did not even mention section 2309, and certainly did not purport to interpret it. Yet the cases following the *Kutz* case that do cite section 2309 rely on the *Kutz* case as authority as to the proper interpretation of the section. Thus was created what is referred to as the ''unbroken'' line of authorities. Certainly I do not have to labor the point that no case is an ''authority'' for a point it did not discuss. It seems to me to be the law that a case that was not an authority on a point when decided, cannot, by some magic, be metamorphized into a binding authority by simply citing it, no matter how many times, on a point it did not decide.

The majority simply do not like the statute of frauds, and believe that it has been outgrown. (See fn. 3 in the majority opinion.) For what it is worth, I might add that in many situations I do not like the statute of frauds either. But I respectfully suggest that my likes or dislikes, or the likes and dislikes of the majority, are legally immaterial. Within constitutional limits it is for the Legislature to determine policy, not for the courts. The Legislature has determined, as section 2309 plainly says, that an oral authority to enter into a contract in writing must be in writing to bind the principal. Section 2309 and section 2310, applying the same rule to ratification, are practically read out of the code by holding that they apply only between the principal and third party but not between the principal and agent. If the oral authorization is insufficient to authorize the agent to bind the prin-

cipal to a third party, a fortiori it is not sufficient to bind the principal to his agent who has but an insufficient authority to act. Of course, any application of the statute of frauds, where the parties admit the oral contract, results in an apparent injustice. In proper cases a liberal application of the doctrines of waiver or estoppel frequently can be employed to reach a just result. But the Legislature has decided that the danger of fraud in enforcing oral contracts outweighs the danger of injustice even where, as here, the oral authorization is admitted. That policy should not be emasculated by the courts.

Section 2309 is not ambiguous or uncertain. It says quite clearly that an agent with oral authority to enter into a contract in writing cannot bind the principal. That obviously means that the agent cannot bind the principal to the third party, as held by the majority, and it also means that the oral authorization cannot bind the principal to his agent. To hold that the third party may sue the agent, and that then the agent can sue the principal for full indemnification is to certainly hold that the oral authorization is sufficient, in direct violation of the section. I am not willing to thus write the section out of the code.

I would reverse the judgment.